```
        UNITED STATES DISTRICT COURT
      SOUTHERN DISTRICT OF WEST VIRGINIA
                AT BLUEFIELD
```

**AHMAD HAMLIN,**

    **Plaintiff,**

**v.**                                            **CIVIL ACTION No. 1:23-00708**

**SGT. MATTHEW HORN, et al.,**

    **Defendants.**

## MEMORANDUM OPINION AND ORDER

Pending before the court are defendants' motions motion to dismiss. See ECF Nos. 19 and 21. For the reasons expressed below, those motions are **DENIED**.

### I. Background

According to the allegations of the Complaint, which are taken as true at this stage of the proceedings, plaintiff Ahmad Hamlin was subject to excessive force at the hands of law enforcement officers employed by the Mercer County Commission and the City of Princeton. Specifically, Hamlin alleges that he "[w]as at his grandmother's house when a search warrant was executed on July 3, 2021, by multiple law enforcement agencies, including the defendant police officers, Sgt. [Matthew] Horn and John Does. Plaintiff surrendered himself to the officers by lying on the floor of the living room. Despite Plaintiff surrendering, the defendant officers stomped on Plaintiff's hand and kneed Plaintiff in his side. The stomping resulted in a

fracture of plaintiff's hand." ECF No. 1 (Complaint) at ¶ 1. Hamlin maintains that he "asked the defendant officers to watch his hands . . . and [they] proceeded to stomp on Plaintiff's hand repeatedly" and "kneed [him] in his side repeatedly as they placed him in restraints." Id. at ¶ 6. Hamlin contends that some of the John Doe defendants "failed to stop the beating when it became evident that the force was excessive." Id. at ¶ 22.

Hamlin alleges that Sgt. Horn and some of the John Doe defendants were employed by the Mercer County Commission while other John Doe defendants were employed by the City of Princeton. See id. at ¶¶ 2, 3. According to Hamlin, both the Mercer County Commission and the City of Princeton have "a custom, policy, or practice of allowing its officers to use excessive force without the fear of being disciplined for such conduct." Id.

On or about June 30, 2023, plaintiff filed a complaint against Sgt. Matthew Horn, the Mercer County Commission, the City of Princeton, and John Doe(s) in the Circuit Court of Mercer County. On November 1, 2023, the case was removed to federal court based upon federal question jurisdiction. In Count I of the Complaint, plaintiff asserts a claim against Sgt. Horn and John Doe(s), pursuant to 42 U.S.C. § 1983, for excessive force in violation of his Fourth Amendment rights.

See id. at ¶¶ 8-12.  Plaintiff also asserts claims for battery (Count II) and recklessness/malicious conduct (Count III) against those same defendants.  See id. at ¶¶ 13-20.  Count IV contains a claim for bystander liability, under 42 U.S.C. § 1983, against some of the John Doe defendants as well as Monell claims against the Mercer County Commission and the City of Princeton.  See id. at ¶ 21-26.

Sgt. Horn, the Mercer County Commission, and the City of Princeton filed the instant motions to dismiss.

## II. Standard of Review

"[A] motion to dismiss for failure to state a claim for relief should not be granted unless it appears to a certainty that the plaintiff would be entitled to no relief under any state of facts which could be proved in support of his claim." Rogers v. Jefferson-Pilot Life Ins. Co., 883 F.2d 324, 325 (4th Cir. 1989) (citation omitted) (quoting Conley v. Gibson, 355 U.S. 41, 48 (1957), and Johnson v. Mueller, 415 F.2d 354, 355 (4th Cir. 1969)).  "In considering a motion to dismiss, the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." Mylan Laboratories, Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993); see also Ibarra v. United States, 120 F.3d 472, 474 (4th Cir. 1997) (same).

In evaluating the sufficiency of a pleading, the cases of <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544 (2007), and <u>Ashcroft v. Iqbal</u>, 556 U.S. 662 (2009), provide guidance. When reviewing a motion to dismiss, under Federal Rule of Civil Procedure 12(b)(6), for failure to state a claim upon which relief may be granted, a court must determine whether the factual allegations contained in the complaint "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests," and, when accepted as true, "raise a right to relief above the speculative level." <u>Twombly</u>, 550 U.S. at 555 (<u>quoting</u> <u>Conley</u>, 355 U.S. at 47; 5 Charles Alan Wright & Arthur R. Miller, <u>Federal Practice and Procedure</u> § 1216 (3d ed. 2004)). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." <u>Id.</u> at 563. As the Fourth Circuit has explained, "to withstand a motion to dismiss, a complaint must allege 'enough facts to state a claim to relief that is plausible on its face.'" <u>Painter's Mill Grille, LLC v. Brown</u>, 716 F.3d 342, 350 (4th Cir. 2013) (<u>quoting</u> <u>Twombly</u>, 550 U.S. at 570).

According to <u>Iqbal</u> and the interpretation given it by our appeals court,

> [L]egal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement fail to constitute well-pled facts for Rule 12(b)(6) purposes. <u>See</u> <u>Iqbal</u>, 129 S.Ct. at 1949.

> We also decline to consider "unwarranted inferences, unreasonable conclusions, or arguments." Wahi v. Charleston Area Med. Ctr., Inc., 562 F.3d 599, 615 n. 26 (4th Cir. 2009); see also Iqbal, 129 S. Ct. at 1951-52.
>
> Ultimately, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 129 S.Ct. at 1949 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). Facial plausibility is established once the factual content of a complaint "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. In other words, the complaint's factual allegations must produce an inference of liability strong enough to nudge the plaintiff's claims "'across the line from conceivable to plausible.'" Id. at 1952 (quoting Twombly, 550 U.S. at 570, 127 S.Ct. 1955).
>
> Satisfying this "context-specific" test does not require "detailed factual allegations." Id. at 1949-50 (quotations omitted). The complaint must, however, plead sufficient facts to allow a court, drawing on "judicial experience and common sense," to infer "more than the mere possibility of misconduct." Id. at 1950. Without such "heft," id. at 1947, the plaintiff's claims cannot establish a valid entitlement to relief, as facts that are "merely consistent with a defendant's liability," id. at 1949, fail to nudge claims "across the line from conceivable to plausible." Id. at 1951.

Nemet Chevrolet, LTD v. Consumeraffairs.com, Inc., 591 F.3d 250, 255-56 (4th Cir. 2009); see also Midgal v. Rowe Price-Fleming Int'l, Inc., 248 F.3d 321, 326 (4th Cir. 2001) ("The presence of a few conclusory legal terms does not insulate a complaint from dismissal under Rule 12(b)(6) when the facts alleged in the complaint cannot support the legal conclusion.").

III.  Analysis

*A.  Monell claims*

Both the Mercer County Commission and the City of Princeton assert that Count IV should be dismissed as to them arguing that plaintiff fails to plausibly allege a claim under Monell v. Department of Social Services, 436 U.S. 658 (1978).  "[U]nder Monell, a municipality is liable only for its own illegal acts." Owens v. Baltimore City State's Attorneys Office, 767 F.3d 379, 402 (4th Cir. 2014) (citations omitted) (emphasis in original).

> Pursuant to this standard, a municipality is liable under § 1983 if it follows a custom, policy, or practice by which local officials violate a plaintiff's constitutional rights.  Monell, 436 U.S. at 694, 98 S. Ct. 2018.  Only if a municipality subscribes to a custom, policy, or practice can it be said to have committed an independent act, the sine qua non of Monell liability.

Id.  A municipal policy or custom may be established

> (1)  through an express policy, such as a written ordinance or regulation; (2) through the decisions of a person with final policymaking authority; (3) through an omission, such as a failure to properly train officers that manifests deliberate indifference to the rights of citizens; or (4) through a practice that is so persistent and widespread as to constitute a custom or usage with the force of law.

Lytle v. Doyle, 326 F.3d 463, 471 (4th Cir. 1999) (internal citation and quotations omitted).

In this case, plaintiff alleges that both the Mercer County Commission and the City of Princeton "ha[ve] a custom, policy,

6

or practice of allowing [their] officers to use excessive force without the fear of being disciplined for such conduct." ECF No. 1 at ¶¶ 2,3.  The Complaint goes on to allege the following:

> City of Princeton and Mercer County Commission have a custom, history, and policy that allows its officers to use excessive force without consequence.  Upon information and belief, there are multiple incidents where the employees of these political subdivisions have participated in excessive force incidents or other 4th Amendment violations without being subjected to any discipline or reprimand.  Their deliberate indifference to the excessive force used against plaintiff is evident through their failure to address, train, or discipline the officer involved in the excessive use of force event described herein, as well as failing to address, train, or discipline officers involved in other incidents violating other individuals' constitutional rights.  Upon information and belief, the City of Princeton and Mercer County Commission ha[ve] taken no steps to discipline the officer[s] named herein.  The failure of the City of Princeton and Mercer County Commission to take action, now and in the past, perpetuates the ongoing use of excessive force by City of Princeton and Mercer County Commission employees such as these defendants.

Id. at ¶ 24.  Based on the foregoing, plaintiff "alleges a theory of custom 'by condonation.'" Owens, 767 F.3d at 402 (quoting Spell v. McDaniel, 824 F.2d 1380, 1390 (4th Cir. 1987)).

> Under this theory of liability, a city violates § 1983 if municipal policymakers fail "to put a stop to or correct a widespread pattern of unconstitutional conduct."  [Spell] at 1389. . . .
>
>     Prevailing under such a theory is no easy task.  A plaintiff must point to a "persistent and widespread practice[] of municipal officials," the "duration and frequency" of which indicate that policymakers (1) had

7

> actual or constructive knowledge of the conduct, and (2) failed to correct it due to their "deliberate indifference." Id. at 1386-91 (alterations omitted). Both knowledge and indifference can be inferred from the "extent" of employees' misconduct. Id. at 1391. Sporadic or isolated violations of rights will not give rise to Monell liability; only "widespread or flagrant" violations will." Id. at 1387.
>
> Although prevailing on the merits of a Monell claim is difficult, simply alleging such a claim is, by definition, easier.

Id. at 402-03. With the foregoing standards in mind, the court finds that plaintiff's complaint adequately alleges a Monell claim against the Mercer County Commission and the City of Princeton. His "factual allegation that the municipal officials have used excessive force on multiple occasions in the recent past, which the court must accept as true, plausibly supports his Monell claim because allegations of multiple instances of the same constitutional violation can establish a persistent, widespread pattern of practice that forms the basis of an impermissible custom." Daniels v. City of Charleston, Civil Action No. 2:20-cv-00779, 2021 WL 3624696, at *5 (S.D.W. Va. Aug. 16, 2021). In Daniels, Judge Copenhaver allowed a Monell claim to go forward based upon plaintiff's allegation that "the violation of [the plaintiff's] federal constitutional rights was caused by implementation of a custom, policy, or official act of the South Charleston Police Department employees including, but not limited to, their ongoing use of excessive force and cruel

8

and unusual punishment while detaining individuals" and that "[t]he use of excessive force has been employed against multiple West Virginia citizens on multiple occasions within the past 5 years" and "[t]he inappropriate use of force has been sanctioned by supervisors and is condoned by supervising personnel." Id. at *4; see also Fields v. King, 576 F. Supp. 3d 392, 410 (S.D.W. Va. 2021) (denying motion to dismiss Monell claim where plaintiff had "alleged several specific incidents which, taken as true, plausibly establish 'a culture of excessive force and utter disregard for proper police procedures'") (Johnston, C.J.); Quigley v. City of Huntington, Case No. 3:17-cv-01906, 2017 WL 953323, at *9 (S.D.W. Va. Sept. 22, 2017) (finding that plaintiff had alleged enough facts to pursue a condonation theory of liability under Monell where he "identifie[d] a municipal custom and cites to seven prior civil rights lawsuits filed against the Huntington Police Department to demonstrate the length and breadth of the alleged problem.") (Eifert, M.J.).

For all these reasons, the court **DENIES** defendants' motions to dismiss plaintiff's Monell claims against them.

B.   *Claims Against Sgt. Horn and John Doe(s)*

Sgt. Horn maintains that the claims against him should be dismissed because the Complaint "is essentially a shotgun pleading" that fails to differentiate between his actions and

9

those of the "unnamed (and unnumbered) John Does."  ECF No. 22 at 6.  The City of Princeton argues that the Complaint is subject to dismissal as to it because it "fails to identify a singular City of Princeton officer that was involved in the arrest of the Plaintiff."  ECF No. 20 at 1.

Generously construing plaintiff's complaint, the court finds that Hamlin has alleged with sufficient specificity that Sgt. Horn, as well as unnamed law enforcement officer(s) employed by the Mercer County Commission and City of Princeton violated his constitutional rights.  Specifically, he alleges that Horn and these other officers used excessive force upon him by stomping on his hand and kneeing him in the side such that he required medical attention.  He further alleges that certain other officers are liable for their failure to intervene to stop the excessive force being used against him.

At this early stage of the proceedings, the court agrees with Hamlin that the allegations against Horn and the John Doe(s) are sufficient to allow further factual development.  Hamlin maintains that the identities of the John Doe defendants can be obtained during discovery.  "Thus, the fact that Plaintiff[] failed to name the unknown officers in the complaint will not require dismissal.  This Court allows John Doe defendants if the names can be found in discovery and complaints

10

are timely amended." Sweat v. West Virginia, CIVIL ACTION NO. 3:16-5252, 2016 WL 7422678, at *3 (S.D.W. Va. Dec. 22, 2016) (noting that "[o]ther courts have similarly allowed plaintiffs to discover names of unnamed defendants in discovery and amend the complaint, even post-Twombly and post-Iqbal") (Chambers, J.).

> As this matter moves forward, Plaintiff will be required to develop more specific evidence through discovery to support his claims. (Also, the Court notes that the applicable rules of civil procedure provide each of the individual Defendants with opportunities to promptly seek dismissal based on a claim of non-involvement in the alleged assault through a motion for judgment on the pleadings or summary judgment). Thus, this order represents only the first procedural step in this litigation and not any indication of the ultimate merits of Plaintiff's claims.

Bailey v. Campbell, CIVIL ACTION NO. 5:22-CV-00052-KDB-SCR, 2024 WL 482211, at *4 (W.D.N.C. Feb. 7, 2024).

IV. Conclusion

Defendants' motions to dismiss are **DENIED.**

The Clerk is directed to send copies of this Memorandum Opinion and Order to all counsel of record and unrepresented parties.

**IT IS SO ORDERED** this 30th day of September, 2024.

ENTER:  *David A. Faber*
David A. Faber
Senior United States District Judge